UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KRONLAGE FAMILY LIMITED PARTNERSHIP** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-1013** |
| **INDEPENDENT SPECIALTY INSURANCE CO. et al.** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Defendants Certain Underwriters at Lloyd's and other Insurers Subscribing to Binding Authority Number B604510568622021 ("Underwriters") and Independent Specialty Insurance Co.'s ("ISIC") (collectively, "Defendants") "Motion to Compel Arbitration and to Dismiss Claims Against Defendants, or Alternatively, Stay Litigation Pending Arbitration" ("Motion to Compel Arbitration").[1] In the motion, Defendants seek an order to compel Plaintiff Kronlage Family Limited Partnership ("Plaintiff") to arbitrate and to dismiss the claims against Defendants or to stay the litigation pending arbitration pursuant to 9 U.S.C. §§ 3, 208.[2] Plaintiff opposes the motion.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court grants the motion in part and denies it in part. The motion is granted to the extent Defendants move the Court to compel arbitration and stay this litigation. The motion is denied to the extent Defendants move this Court to dismiss Plaintiff's claims against them.

---

[1] Rec. Doc. 28.

[2] *Id*. at 1.

[3] Rec. Doc. 61.

1

## I. Background

This litigation arises out of alleged damage to Plaintiff's property during Hurricane Ida.[4] Plaintiff filed a petition for damages against Defendants in the Twenty-Fourth Judicial District Court for the Parish of Jefferson on March 15, 2022.[5] According to the Petition, Plaintiff purchased an insurance policy from ISIC on April 6, 2021, insuring the properties located at 1801 and 1809 S. Sherwood Forest Blvd., Baton Rouge, LA 70816, against all risks of loss (the "Policy").[6] In the Petition, Plaintiff avers that, on August 29, 2021, the property covered by the Policy was severely damaged by hurricane force winds sustained during Hurricane Ida.[7]

On April 14, 2022, Defendants removed the action to this Court, asserting subject matter jurisdiction based on a federal question under 28 U.S.C. §§ 1441 and 1446.[8] In the Notice of Removal, Defendants asserted that removal was proper because there is an arbitration provision in the Policy that falls under the Convention Act, 9 U.S.C. § 201, *et seq.* (the "Convention Act").[9] "Congress promulgated the Convention Act in 1970 to establish procedures for our courts to implement" the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").[10] The Convention is an international treaty, ratified by Congress in 1970, which seeks to "encourage the recognition and enforcement of commercial contracts and to unify the standard by which the agreements to arbitrate are observed, and arbitral awards are enforced in

---

[4] Rec. Doc. 1-1 at 1.

[5] *Id*.

[6] *Id*. at 2.

[7] *Id*. at 3.

[8] Rec. Doc. 1 at 3.

[9] *Id.*

[10] *McDermott Int'l, Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991).

signatory countries."[11] Therefore, Defendants averred in the Notice of Removal that, because Underwriters are a foreign corporation with its principle place of business in the United Kingdom, and because the United Kingdom signed the Convention, this Court has original jurisdiction under the Convention Act.[12]

Plaintiff then filed a motion to remand, arguing that removal was improper because it was based on an invalid arbitration provision and relied on the incorrect assumption that the Convention Act preempts Louisiana insurance law.[13] Plaintiff also filed a motion to invalidate the arbitration provision in the Policy.[14] In its August 17, 2022 Order and Reasons, the Court denied both motions.[15] The Court explained that removal was proper pursuant to the Convention Act because the dispute relates to the arbitration agreement and, given that Underwriters are citizens of the United Kingdom, which is a signatory to the Convention, the arbitration agreement falls under the Convention.[16] The Court also explained that Louisiana law does not reverse-preempt the Convention Act.[17]

---

[11] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

[12] *Id.* at 3–5. 9 U.S.C. § 205 states that "where a subject matter of an action or proceeding pending in State court relates to an arbitration agreement or award falling under the Convention, … the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States and division embracing the place where the action or proceeding is pending."

[13] *See* Rec. Docs. 7, 7-1.

[14] Rec. Doc. 20.

[15] Rec. Doc. 25.

[16] *See id.* at 13–15.

[17] *See id.* at 16.

On August 24, 2022, Defendants filed the instant Motion to Compel Arbitration.[18] On September 1, 2022, Plaintiff filed a Motion to Dismiss Underwriters[19] and, on September 2, 2022, a "Motion to Reconsider Remand of Remaining Claims Against [ISIC] to State Court" ("Motion to Reconsider Remand") (collectively, "Plaintiff's Motions").[20] These motions were originally set for submission on September 21, 2022. On September 8, 2022, Plaintiff filed a motion to expedite Plaintiff's Motions[21] and a motion to stay the Motion to Compel Arbitration.[22] That same day, Defendants filed a motion for extension of time to respond to Plaintiff's Motions.[23] On September 9, 2022, the Court reset the submission dates for Plaintiff's Motions to October 5, 2022, and the submission date for the Motion to Compel Arbitration to November 2, 2022.[24]

On October 18, 2022, the Court denied Plaintiff's Motion to Dismiss Underwriters, finding that the motion was an attempt to circumvent the Court's previous ruling denying remand and to avoid arbitration, thereby prejudicing ISIC.[25] October 19, 2022, the Court also denied Plaintiff's Motion to Reconsider Remand as moot.[26] On October 25, 2022, Plaintiff opposed the Motion to Compel Arbitration.[27]

---

[18] Rec. Doc. 28.

[19] Rec. Doc. 31.

[20] Rec. Doc. 32.

[21] Rec. Doc. 33.

[22] Rec. Doc. 34.

[23] Rec. Doc. 35.

[24] Rec. Doc. 36.

[25] *See* Rec. Doc. 59.

[26] Rec. Doc. 60.

[27] Rec. Doc. 61.

## II. Parties' Arguments

*A.     Defendants' Arguments in Support of the Motion to Compel Arbitration*

In support of the Motion to Compel Arbitration, Defendants argue that all four requirements necessary for a court to compel an arbitration under a provision governed by the Convention Act are satisfied.[28] Defendants argue that the first criteria—whether there is a written agreement to arbitrate the matter—is met because "an arbitration clause contained in an insurance policy constitutes an enforceable written agreement."[29] Defendants assert that the second criteria—whether the agreement provides for arbitration in a Convention signatory nation—is satisfied because the Policy provides for arbitration in the United States, which ratified the Convention in 1970.[30] Defendants contend that the third criteria—whether the arbitration agreement arises from a commercial legal relationship—is satisfied because "[t]his District has consistently held that an arbitration clause in an insurance agreement satisfies the requirement that the arbitration agreement arises from a commercial legal relationship."[31] Finally, Defendants aver that the fourth criteria—whether any party to the agreement is not an American citizen—is satisfied because Underwriters is a citizen of the United Kingdom comprised partially of syndicates that are also citizens of the United Kingdom.[32] Thus, Plaintiff concludes that, because these four

---

[28] *See* Rec. Doc. 28-1 at 5.

[29] *Id*. (citing *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-6657, 2018 WL 4627387, at *3 (E.D. La. Sept. 27, 2018)).

[30] *Id*. at 6.

[31] *Id*. (citing *Gulledge*, 2018 WL 4627387, at *3; *Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641, 646 (E.D. La. 2009)).

[32] *See id*. at 6–7.

requirements are satisfied, the Convention requires that the Court compel arbitration absent a finding that the agreement is "null and void, inoperative or incapable of being performed."[33]

Defendants argue that the "null and void exception" is very narrow and does not apply to the instant arbitration provision because there is no evidence of fraud duress, or mistake.[34] Defendants further argue that the Policy's arbitration provision "contains a broad delegation clause that requires that the Arbitration Panel, not the Court, resolve all questions regarding whether specific issues fall within [its] scope."[35] Defendants assert that the Fifth Circuit has held that "[i]f an arbitration agreement contains a delegation clause, 'the motion to compel should be granted in almost all cases.'"[36] Thus, Defendants conclude that, because the delegation clause in question includes "all matters of difference," it "refers all disputes, including Plaintiff's bad faith claims, to arbitration."[37]

Defendants make two further arguments in support of the Motion to Compel Arbitration. First, Defendants argue that "Plaintiff is equitably estopped from objecting to arbitration [because] all insurers have acted in concert in evaluating and adjusting Plaintiff's insurance claims."[38] Defendants assert that another court in the Eastern District of Louisiana has held in that, in a case involving many of the same parties "and a substantially identical arbitration provision," the plaintiff was equitably estopped from avoiding arbitration where it " alleged interdependent and

---

[33] *Id*. at 7 (quoting *Freudensprung*, 379 F.3d at 339).

[34] *Id*. (quoting *Johnson v. NCL (Bah.) Ltd.*, 163 F. Supp. 3d 338, 361 (E.D. La. 2016)).

[35] *Id*. at 8.

[36] *Id*. (quoting *Kubala v. Supreme Prod. Sers.*, 830 F.3d 199, 202 (5th Cir. 2016)).

[37] *Id*. at 8–9 (quoting *Georgetown Home Owners Ass'n v. Certain Underwriters at Lloyd's*, No. 20-102, 2021 2021 WL 359735, at *15 (M.D. La. Feb. 2, 2021)).

[38] *Id*. at 9 (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 537 (5th Cir. 2000)).

concerted misconduct."[39] Defendants aver that, likewise, "Plaintiff fails to differentiate between the alleged actions of any defendant insurer" because it reported the alleged loss to both Defendants, assigned the loss to a single claim, and asserted a breach of a single contract.[40] Thus, Defendants conclude that "the claims against the defendant insurers are considered to be concerted and interdependent" and so the doctrine of equitable estoppel applies.[41]

Second, Defendants argue that Louisiana law does not prevent the enforcement of the arbitration clause.[42] Defendants assert that the Fifth Circuit has made clear that the Convention Act supersedes state law.[43] Thus, Defendants conclude that the Court should grant the Motion to Compel Arbitration.[44]

### B. *Plaintiff's Arguments in Opposition to the Motion to Compel Arbitration*

In opposition to Defendants' Motion to Compel Arbitration, Plaintiff advances three arguments. First, Plaintiff argues that the arbitration provision should be null and void because "Louisiana considers arbitration agreements in property insurance contracts to be a nullity."[45]

Second, Plaintiff argues that the contract should be null and void because it "never intentionally agreed to arbitrate any insurance claims."[46] Plaintiff asserts that, upon receiving the

---

[39] *Id*. at 9–10 (quoting *Clean Pro Carpet & Upholstery Care Inc. v. Upper Pontalba of Metairie Condo Ass'n*, No. 20-1550, 2021 WL 638117, at *6 (E.D. La. Feb. 18, 2021)).

[40] *Id*. at 10–11.

[41] *Id*. at 10–12 (quoting *Holts v. TNT Cable Contractors, Inc.,* No. 19013546, 2020 WL 1046337, at *4 (E.D. La. Mar. 4, 2020)).

[42] *See id.* at 13.

[43] *Id*. (citing *McDonnel Grp., L.L.C. v. Great Lakes Ins. Se*, 923 F.3d 427 (5th Cir. 2019)).

[44] *Id*. at 14.

[45] Rec. Doc. 61 at 3.

[46] *Id*. at 1.

Policy, it told its "insurance agent that the arbitration clause was not acceptable . . . [and] needed to be taken out of the policy or a different policy [would need to be] obtained."[47] Plaintiff avers that "[t]he insurance agent said he would handle it, but he apparently did [not]."[48] Thus, Plaintiff concludes that the contract should be null and void because Plaintiff clearly never intended to receive an insurance policy that required arbitration.[49] Plaintiff also concludes that the contract should be null and void based on the internationally recognized defense of mistake because it never willingly accepted having an arbitration agreement in the Policy, requested that the insurance agent fix the problem, and "has now sued [its] insurance agent for this mistake."[50]

Third, Plaintiff argues that the doctrine of equitable estoppel does not apply because the Policy makes clear that it be treated as "several liability contracts" and because, "[a]t every turn of this case," Plaintiff has sought to treat ISIC differently than Underwriters.[51] Plaintiff avers that it "sought court approval for voluntary dismissal of [Underwriters] with prejudice" and has "offered to settle with [Underwriters] for nothing because [it] does not want to arbitrate."[52] Plaintiff asserts that, even though it has not settled its claims against Underwriters yet, "we can expect that they will" such that "there will no longer be any legal justification for an arbitration which, under Louisiana law, is unenforceable."[53] Regardless, Plaintiff argues that "the several liability aspect of

---

[47] *Id*. at 2.

[48] *Id*.

[49] *See id*. at 3–4.

[50] *Id*. at 6.

[51] *Id*.

[52] *Id*.

[53] *Id*. at 6–7.

8

the [Policy] means that [Plaintiff's] rights against [ISIC] are against a domestic insurer" such that the claims against ISIC should not be subject to arbitration.[54]

### III. Legal Standard

Agreements arising under the Convention are subject to the provisions of the FAA unless the FAA is in "conflict" with the Convention.[55] The FAA was enacted in order to "allow[] a party to . . . an arbitration agreement to petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement."[56] In *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, the United States Court of Appeals for the Fifth Circuit explained that the FAA was "in large part motivated by the goal of eliminating the courts' historic hostility to arbitration agreements."[57] The Fifth Circuit further explained that "Section 2 of the FAA puts arbitration agreements on the same footing as other contracts."[58] This means that, "as a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts."[59]

Under the FAA, there is a "strong federal policy in favor of enforcing arbitration agreements."[60] Section 3 of the FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon

---

[54] *Id*. at 7.

[55] *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S.Ct. 1637, 1644 (2020).

[56] *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) (internal quotation marks omitted).

[57] 379 F.3d 159, 166 (5th Cir. 2004).

[58] *Id.*

[59] *Id.*

[60] *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prod. Co.*, 243 F.3d 906, 909 (5th Cir. 2001) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

9

any issue referable to arbitration . . . the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .[61]

"[I]f the issues in a case are within the reach of that [arbitration] agreement, the district court has no discretion under section 3 to deny the stay."[62]

## IV. Analysis

### A. Whether there is a Valid Agreement to Arbitrate Plaintiff's Claims

As the Court explained in its August 17, 2022 Order and Reasons, the Convention Act, and not Louisiana law, governs the Policy's arbitration provision.[63] The Convention Act incorporates the Federal Arbitration Act ("FAA") except for the few provisions where the two laws conflict.[64] The Supreme Court has noted the "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce."[65] Thus, the Fifth Circuit has explained that, "[i]n determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry."[66] Therefore, absent a finding that the subject "agreement is null and void, inoperative, or incapable of being performed," a court must grant a motion to compel arbitration if the following requirements are met: "(1) there is a written

---

[61] 9 U.S.C. § 3.

[62] *Texaco Expl. & Prod. Co.*, 243 F.3d at 909 (citing *Hornbeck Offshore Corp. v. Coastal Carriers Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)).

[63] Rec. Doc. 25 at 12–16. Therefore, the Court rejects Plaintiff's argument that the Policy's arbitration provision is null and void because "Louisiana considers arbitration agreements in property insurance contracts to be a nullity." Rec. Doc. 61 at 3.

[64] *McDermott Int'l., Inc. v. Lloyds Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991) ("The Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions.") (citing 9 U.S.C. § 208).

[65] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 631 (1985).

[66] *Freudensprung v. Offshore Tech. Servs., Inc*., 379, F.3d 327, 339 (5th Cir. 2004) (citing *Francisco v. STOLT ACHIEVEMENT MT,* 293 F.3d 270, 273 (5th Cir. 2002)).

agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'"[67]

Plaintiff does not contest that these requirements are satisfied. Furthermore, the Court already explained that they are easily met in its August 17, 2022 Order and Reasons.[68] Plaintiff also does not question that its claims are within the scope of the Policy's arbitration provision.[69] Thus, the main dispute is whether the arbitration provision is valid. The Court must compel the parties to arbitrate unless the agreement "is null and void, inoperative or incapable of being performed."[70] However, this "null and void" defense, which is set forth in Article II(3) of the Convention, "'limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses' such as fraud, mistake, and duress."[71] "In light of the strong presumption favoring arbitration, 'a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity.'"[72]

Plaintiff asserts that its insurance broker's failure to remove the arbitration provision from the Policy constitutes a mistake sufficient to void the arbitration clause. The Fifth Circuit explained

---

[67] *Id*. (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985); *Francisco*, 293 F.3d at 273).

[68] *See* Rec. Doc. 25 at 13–14.

[69] *See Sedco,* 767 F.2d at 1145 ("Whenever the scope of an arbitration clause is *in question*, the court should construe the clause in favor of arbitration.") (emphasis added).

[70] *Id.* at 1146.

[71] *Johnson v. NCL (Bahamas) Ltd.* 163 F.Supp.3d 338, 361 (E.D. La. 2016) (Brown J.) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 79–80 (1st Cir. 2000)).

[72] *1010 Common, LLC v. Certain Underwriters at Lloyd's, London*, No. 20-2326, 2020 WL 7342752, at *9 (E.D. La. Dec. 14, 2020) (quoting *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004)).

that the Convention supersedes state law "unless there are defenses set forth in the Convention."[73] The Supreme Court has also made clear that state law contract principles apply to agreements arising under the Convention, stating that "[f]ar from displacing domestic law, the provisions of Article II [of the Convention] contemplate the use of domestic doctrines to fill gaps in the Convention." Thus, the question of whether the agreement to arbitrate is null and void is analyzed under state law. As to which state law to apply here, Plaintiff has consistently argued that the Policy is subject to Louisiana law.[74]

However, the alleged mistake does not void the arbitration clause under Louisiana law. Pursuant to Louisiana Civil Code article 1949, a mistake "vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party."[75] As the Louisiana Supreme Court has explained, "both parties can individually be mistaken . . . vitiating the consent of both parties; or one party can be mistaken and that mistake will vitiate consent if the other party knows or should have known [that the error was the reason for consent]."[76] The policy underpinning this rule is the understanding that "[w]hen one party is in error, . . . there is theoretically no meeting of the minds, but granting relief to the party in error will unjustly injure the interest of the other party if he is

---

[73] *Safety Nat. Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 725 (5th Cir. 2009) ("The Convention itself contains defenses to the enforceability of an arbitration agreement . . . Accordingly, it is by reference to the Convention that we have a command—a judicially enforceable remedy—that we 'supersede' Louisiana law unless there are defenses set forth in the Convention that counteract that command."); *see also Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002) (holding that the question of whether there is a valid agreement to arbitrate under the FAA is governed by ordinary state law principles).

[74] *See* Rec. Doc. 61 at 4–6.

[75] La. Civ. Code art. 1949.

[76] *Peironnet v. Matador Res. Co.*, 2012-2292 (La. 6/28/13); 144 So. 3d 791, 807.

innocent of the error."[77] Plaintiff has stated no facts to suggest that Defendants should have known that Plaintiff would not have agreed to purchase the Policy containing an arbitration clause. On the contrary, property insurance contracts regularly include arbitration clauses. Thus, voiding the arbitration clause would unjustly injure Defendants, who appear innocent of the alleged mistake. Accordingly, Plaintiff has failed to overcome the substantial burden of establishing the invalidity of the Policy's arbitration clause, especially given the strong presumption in favor of arbitration that applies with "special force" to arbitration clauses falling under the Convention.[78]

### B. *Whether Equitable Estoppel is Warranted*

Plaintiff also argues that the instant motion should be denied because the Policy states that it should be treated as two different contracts—one between Plaintiff and Underwriters and one between Plaintiff and ISIC. Defendants do not contest that they are severally liable such that the Policy should be treated as two separate contracts; however, Defendants assert that Plaintiff is equitably estopped from objecting to arbitration because Plaintiff fails to differentiate between the actions of ISIC and Underwriters.

Even if Plaintiff's agreement with ISIC is a separate contract not covered by the Convention, the Fifth Circuit has held that "in certain limited instances, pursuant to an equitable estoppel doctrine, a nonsignatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff."[79] This form of estoppel applies "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the

---

[77] *Id.*

[78] *See Mitsubishi Motors Corp.*, 473 U.S. at 638–40; *see also Carter,* 362 F.3d at 297.

[79] *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000).

contract."[80] The Fifth Circuit explained that "[o]therwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted."[81]

Defendants argue that the doctrine of equitable estoppel should apply to the agreement between Plaintiff and ISIC because Plaintiff fails to differentiate between ISIC and Underwriters' conduct but rather assigns its loss to both Defendants through a single claim. Plaintiff argues that it has differentiated between the two Defendants throughout this litigation by offering to settle or voluntarily dismiss its claims against Underwriters. Plaintiff's argument demonstrates a misunderstanding of the law. Whether Plaintiff alleges "substantially interdependent and concerted misconduct" by ISIC and Underwriters is determined by looking to the Petition, which sets forth "the operative facts for purposes of the motion to compel arbitration."[82] Plaintiff's treatment of Defendants after commencing litigation is irrelevant to the conduct alleged in the Petition.

Here, the Petition not only contains repeated allegations of substantially interdependent and concerted misconduct, but refers to ISIC and Underwriters collectively[83] and makes all allegations against both Defendants.[84] In *City of Kenner v. Certain Underwriters at Lloyd's, London*, another court in the Eastern District of Louisiana applied the doctrine of equitable estoppel where the plaintiff alleged that the defendants "'collectively' insured the property . . .

---

[80] *Id*. at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999)) ("We agree with the intertwined-claims test formulated by the Eleventh Circuit.").

[81] *Id*.

[82] *Id.* at 527, 529.

[83] *See* Rec. Doc. 1-1 at 2.

[84] *See generally* Rec. Doc. 1-1.

[and] received proof of loss but [] failed to pay out on the damage," thus breaching their duty of good faith.[85] Likewise, Plaintiff alleges that Defendants collectively insured the policy, received Plaintiff's insurance claim, refused to tender any payment for the damage, and, in doing so, breached the Policy in bad faith.[86] Therefore, Plaintiff fails to differentiate between the conduct of ISIC and Underwriters. Accordingly, application of equitable estoppel is warranted.

C.     *Whether This Action Should be Dismissed Pending Arbitration*

Defendants ask the Court to dismiss or, in the alternative, stay this action pending arbitration.[87] Thus, having determined that Plaintiff's claims must be submitted to arbitration, the Court must next determine whether to dismiss or stay this action pending arbitration. Defendants provide no support for their request for dismissal and Plaintiff does not address the issue.

Section 3 of the FAA provides that, when claims are properly referable to arbitration, the court shall stay the trial of the action until the arbitration is complete upon application of one of the parties.[88] Thus, "because the Convention Act incorporates the FAA, 'parties whose agreements fall under the Convention have had to seek authority for stays under [Section 3].'"[89] Accordingly, a court may not deny a stay when a valid arbitration agreement falls under the Convention. Where all of Plaintiff's claims are subject to arbitration, the Fifth Circuit has clarified that, although

---

[85] No. 21-2064, 2022 WL 307295, at *3 (E.D. La. Feb. 2, 2022) (internal citations omitted).

[86] Rec. Doc. 1-1 at 2–4.

[87] Rec. Doc. 28 at 2.

[88] 9 U.S.C. § 3.

[89] *1010 Common, LLC*, 2020 WL 7342752, at *12 (quoting *Todd v. Steamship Mut. Underwriting Ass'n, Ltd.*, No. 08-1195, 2011 WL 1226464, at *2 (E.D. La. March 28, 2011)).

dismissal is not an abuse of discretion, it is not mandatory.[90] Therefore, the Court exercises its discretion to stay this litigation pending arbitration rather than dismiss Plaintiff's claims because Defendants have not explained why dismissal is warranted.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Compel Arbitration and to Dismiss Claims Against Defendants, or Alternatively, Stay Litigation Pending Arbitration"[91] is **GRANTED IN PART** and **DENIED IN PART**. The Motion is **GRANTED** to the extent Defendants move the Court to compel arbitration and stay this litigation. The Motion is **DENIED** to the extent Defendants move this Court to dismiss Plaintiff's claims against them.

**IT IS FURTHER ORDERED** that the above-captioned matter is **STAYED AND ADMINISTRATIVELY CLOSED** pending arbitration.

**NEW ORLEANS, LOUISIANA**, this  17th  day of January, 2023.

>   **NANNETTE JOLIVETTE BROWN**
>   **CHIEF JUDGE**
>   **UNITED STATES DISTRICT COURT**

---

[90] *See Apache Bohai Corp. LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003); *see also Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 676 (5th Cir. 1999) (stating that "district courts have discretion to dismiss cases in favor of arbitration," but not implying any obligation to do so).

[91] Rec. Doc. 28.